S.  No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

T.  Best Interests Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis in Appendix E to the Disclosure Statement, the Eisenberg Declaration, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered, (2) either have not been controverted by other persuasive evidence or have not been challenged, (3) are based upon reasonable and sound assumptions, (4) provide a reasonable estimate of the liquidation values of the Debtors upon conversion to a case under chapter 7 of the Bankruptcy Code, and (5) establish that each holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

U.  Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(8)). With the exception of Class 6C, all voting Impaired Classes have voted to accept the Plan. Further, Class 11 is deemed to have rejected the Plan and, accordingly, confirmation is sought pursuant to 11 U.S.C. § 1129(b).

V.  Treatment Of Administrative And Priority Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment

of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

W. **Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))**. Each Impaired Class of Claims other than those listed in paragraph U above has voted to accept the Plan and, to the best of the Debtors' knowledge, do not contain "insiders," as such term is defined in 11 U.S.C. § 101(31). Thus, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

X. **Feasibility (11 U.S.C. § 1129(a)(11))**. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The financial projections in Appendix C to the Disclosure Statement, the Sheehan Declaration, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other evidence or sufficiently challenged in any of the objections to the Plan, (3) establish the ability of the Debtors to pay their debts as they mature, and (4) establish that subject to, and upon consummation of, the transactions set forth as conditions to the Effective Date in Article 12.2 of the Plan, the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or the Reorganized Debtors. Specifically, based on the Court's entry of the Order Under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002, 6004, 9006, and 9007 Authorizing Debtors' Entry into Exit Facility Engagement and Fee Letters and Performance Thereunder ("Exit Financing Order") (Docket No. 10960), the uncontroverted evidence proffered or adduced at the Confirmation Hearing, and the requirement of consummation of the Exit Financing Arrangements as a condition

to the Effective Date, the Court finds that the Plan is feasible, notwithstanding that a firm commitment for exit financing was not entered into as of the Confirmation Hearing.

Y. <u>Payment Of Fees (11 U.S.C. § 1129(a)(12))</u>. The Debtors have paid, or pursuant to Sections 1.2, 2.1, and 14.2 of the Plan will pay by the Effective Date, fees payable under 28 U.S.C. § 1930 plus accrued interest under 31 U.S.C. § 3717. Thus, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

Z. <u>Continuation Of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. As required by section 1129(a)(13) of the Bankruptcy Code, and in connection with the authorization of the Delphi-GM Definitive Documents as set forth in section 7.20 of the Plan and the assumption of the collective bargaining agreements as set forth in section 7.21 of the Plan, following the Effective Date of the Plan, the payment of all retiree benefits (as defined in section 1114 of the Bankruptcy Code) will continue at the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to the entry of this Confirmation Order, for the duration of the periods the Debtors have obligated themselves to provide such benefits, thereby satisfying section 1129(a)(13) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that during the Chapter 11 Cases, modifications to certain retiree benefits were made solely in accordance with the terms of the existing retiree benefit plans, and not as a result of subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code.

AA. <u>Non-Applicability Of Sections 1129(a)(16)</u>. Section 1129(a)(16) does not apply because each of the Debtors is a moneyed, business or commercial corporation or limited liability company.

BB.  **Section 1129(b)-Confirmation Of The Plan Over Nonacceptance Of Impaired Classes.** All voting Impaired Classes voted to accept the Plan, other than those Classes identified in paragraph U above. Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all Impaired Classes have voted to accept the Plan. All of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8), with respect to such Classes, have been met. Specifically, Class 6C voted to reject the Plan and Class 11 is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g). With respect to Class 6C, the Plan is fair and equitable and does not discriminate unfairly against the holders of Class 6C claims. Holders of Class 6C claims will receive property at least equal to the full amount of its claim with postpetition interest. With respect to Class 11, no holders of Claims or Interests junior to the holders of such Class will receive or retain any property under the Plan on account of such Claims or Interests, and, as evidenced by the valuations and estimates contained in the Disclosure Statement and admitted into evidence at the Confirmation Hearing, no Class of Claims or Interests senior to such Class is receiving more than full payment on account of such Claims or Interests. No Class of Interests is of the same or equal priority as Class 11. Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code, and section 1129(b) of the Bankruptcy Code therefore is satisfied.

CC.  **Principal Purpose Of Plan (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

DD. <u>Modifications To The Plan</u>. The modifications to the Amended Plan described and/or set forth beginning on Exhibit A hereto constitute non-material or technical changes and/or changes with respect to particular Claims or Interests by agreement with holders of such Claims or Interests, and do not materially adversely affect or change the treatment of any Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Amended Plan.

EE. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. The Debtors and their agents, representatives, attorneys, and advisors, and other Persons involved in the solicitation process have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Solicitation Procedures Order and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 11.11 of the Plan.

FF. <u>The Reorganized Debtors Will Not Be Insolvent Nor Left With Unreasonably Small Capital</u>. As of the occurrence of the Effective Date and after taking into account the transactions contemplated by the Plan, on a consolidated basis (a) the present fair saleable value of the property of the Reorganized Debtors will be not less than the amount that will be required to pay the probable liabilities on the Reorganized Debtors' then-existing debts as they become absolute and matured considering all financing alternatives and potential asset sales reasonably available to the Reorganized

Debtors and (b) the Reorganized Debtors' capital is not unreasonably small in relation to their business or any contemplated or undertaken transaction.

GG. <u>Valuation</u>. The valuation analysis appended to the Disclosure Statement as Appendix D (the "Valuation Analysis") and the implied total enterprise value, as described in the Resnick Declaration and Exhibits D and E thereto, are reasonable.

HH. <u>Executory Contracts</u>. The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases as set forth in Article VIII of the Plan. Each assumption or rejection of an executory contract or unexpired lease as provided in Article 8.1 of the Plan shall be legal, valid, and binding upon the applicable Reorganized Debtor and all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate authorizing order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

II. <u>Adequate Assurance</u>. The Debtors have cured, or provided adequate assurance that the Reorganized Debtors will cure, defaults (if any) under or relating to each of the Assumed Contracts and Leases which are being assumed by the Debtors pursuant to the Plan.

JJ. <u>Conditions To Confirmation</u>. The conditions to Confirmation set forth in Article 12.1 of the Plan have been satisfied, waived, or will be satisfied by entry of this Confirmation Order.

KK. <u>Conditions To Consummation</u>. The conditions to the Effective Date are set forth in Article 12.2 of the Plan. Certain conditions to the Effective Date set forth in

Article 12.2 of the Plan may be waived as set forth in section 12.3 of the Plan, without any further notice to parties-in-interest or the Court and without a hearing except as otherwise provided in section 12.3 of the Plan.

LL. <u>Retention Of Jurisdiction</u>. The Court properly may retain jurisdiction over the matters set forth in Article XIII of the Plan.

MM. <u>Agreements And Other Documents</u>. The Debtors have made adequate and sufficient disclosure of: (1) the adoption of new or amended and restated certificates of incorporation and bylaws or similar constituent documents for the Reorganized Debtors, (2) the distributions to be made pursuant to the Plan, (3) the issuance for distribution, in accordance with the terms of the Plan, of the New Common Stock, New Preferred Stock, New Warrants, GM Note, and 414(l) Note, (4) the Investment Agreement, (5) the Delphi-GM Definitive Documents, (6) the MDL Settlements, (7) the memoranda of understanding with the Unions, (8) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to any of the foregoing, (9) the adoption, execution, and implementation of employment and indemnification agreements, the Management Compensation Plan, and other employee plans and related agreements, and (10) the other matters provided for under the Plan involving the corporate structure of the Reorganized Debtors.

NN. <u>TOPrS Subordination Provision</u>. Under the Plan, Senior Debt is to be paid in full based on the negotiated Plan value and the subordination provisions of the TOPrS Indenture are accordingly deemed to have been effectuated as between the holders of the TOPrS and the holders of Senior Debt, and thus, are deemed satisfied. The distributions afforded to the holders of TOPrS under the Plan comply with the subordination

provisions because the TOPrS receive the distributions remaining after other holders of claims in Class C (General Unsecured Claims) are paid in full with postpetition interest (as required by the TOPrS Indenture). Moreover, because of the settlement nature of the Plan, the deemed satisfaction of the TOPrS subordination provision is proper. In addition, because the Senior Notes and the TOPrS, if treated as being in separate classes as permitted under Article 14.3 of the Plan, voted to accept the Plan under section 1126 of the Bankruptcy Code, the Senior Notes, as a class, and the TOPrS, as a class, have each agreed to the treatment under the Plan and are not entitled to any different or additional recovery under the Plan, and are not entitled to the treatment specified in section 1129(b) of the Bankruptcy Code.

OO. <u>Exit Financing Arrangements</u>. The Plan provides for the Exit Financing Arrangements on the terms and conditions set forth in Exhibit 7.14 to the Plan, or in a form substantially similar thereto. The Debtors have provided sufficient and adequate notice of the Exit Financing Arrangements. All documents necessary to implement the Plan including, without limitation, those associated with the Exit Financing Arrangements, shall, upon execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

PP. <u>Investment Agreement</u>. The Investment Agreement is an essential element of the Plan and entry into and consummation of the Investment Agreement is in the best interests of the Debtors, their estates, and their creditors and is approved in all respects, as reflected in the Court's previous orders dated August 2, 2007 and December 10, 2007 authorizing and approving the Debtors' entrance into the Delphi-Appaloosa Equity Purchase and Commitment Agreement and subsequent amendment thereto

(Docket Nos. 8856 and 11382), which orders are incorporated herein by reference. The investment being made by the Plan Investors pursuant to, and subject to the terms and conditions of, the Investment Agreement represents reasonably equivalent value for the consideration the Plan Investors are receiving under the Plan. Each Plan Investor (in its capacity as such or otherwise), its Affiliates, shareholders, partners, directors, officers, employees, and advisors, has acted in good faith in connection with the Chapter 11 Cases and the formulation and confirmation of the Plan.

QQ. <u>Delphi-GM Definitive Documents</u>. The Debtors' settlement with GM, as memorialized in the Plan and the Delphi-GM Definitive Documents (the "GM Settlement"), is essential to the Plan and provides material and substantial consideration to Delphi, which allows Delphi to provide material and substantial distributions to stakeholders that would be impossible to deliver without the GM Settlement. As adequately described in Section V.F. of the Disclosure Statement, the Debtors underwent an extensive investigation and analysis of their claims and potential claims against GM and certain defenses to claims that might be asserted by GM against the Debtors' estates (the "GM Claims and Defenses") and determined that the consensual resolution of the GM Claims and Defenses as set forth in the Delphi-GM Definitive Documents is essential to the reorganization, in the best interest of the Debtors' estates, and superior to any alternative under which the Debtors would seek to pursue the GM Claims and Defenses through proceedings adversarial to GM. As adequately described in Section IX.B.1 of the Disclosure Statement, absent the GM Settlement, the Debtors would not be able to provide meaningful distributions to junior stakeholders or a par plus accrued recovery at Plan Equity Value for holders of unsecured claims. Pursuant to Bankruptcy

Rule 9019, which is made applicable to the determination of the reasonableness of a settlement included within a plan as permitted under section 1123(b)(3)(A) of the Bankruptcy Code, and based on the admitted evidence and considerations by the Court of the probability of success, the difficulties in collection, the complexity of the litigation, the expense, inconvenience and delay, and other factors, the Court finds:

1. the proposed recoveries achieved by the Debtors' estates, creditors, and equity holders as a result of the GM Settlement are higher than reasonably foreseeable litigation outcomes in the absence of the GM Settlement and therefore fall within the range of reasonableness;

2. any litigation against GM in the absence of the GM Settlement would be very complex and very time consuming, with the attendant expense, inconvenience, and delay to the Debtors' estates;

3. the GM Settlement is supported by both statutory committees appointed in these Chapter 11 Cases;

4. as discussed in more detail in section SS of this Confirmation Order, the releases of the GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) pursuant to the Plan and the GM Settlement are fair and equitable; and

5. the GM Settlement is the product of good faith negotiations and arm's-length bargaining between the parties, all of whom were represented by competent and experienced counsel and other advisors, and is necessary to the Plan.

RR. <u>Union Settlement Agreements</u>. The Union Settlement Agreements are essential to the Plan and the assumption of the Union Settlement Agreements is in the

best interests of the Debtors, their estates, and their creditors and is approved in all respects, as reflected in the Court's previous orders on July 19, 2007, August 16, 2007, and August 29, 2007, authorizing and approving the Debtors' entry into the Union Settlement Agreements (Docket Nos. 8693, 9106, 9107, and 9169). The Debtors have exercised reasonable business judgment in determining to enter into the Union Settlement Agreements as set forth in Exhibits 7.21(a)-(d) to the Plan. The Debtors have provided sufficient and adequate notice of the Union Settlement Agreements to all parties-in-interest, including, without limitation, the Creditors' Committee, the Equity Committee, the Plan Investors, and GM. Each Union has acted in good faith in connection with the Chapter 11 Cases and the formulation and confirmation of the Plan.

    SS.    <u>Releases And Discharges</u>.

    1.    In General. The discharge, release, indemnification, and exculpation provisions set forth in Article XI of the Plan constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are made in exchange for consideration and are in the best interests of the Debtors, their Estates, and holders of Claims and Interests, are fair, equitable, reasonable, and are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, indemnification, and exculpation provisions set forth in the Plan:

    (a)    is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d),

    (b)    is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code,

(c) is an integral element of the settlements and transactions incorporated into the Plan,

(d) confers material benefit on, and is in the best interests of, the Debtors, their estates, and the holders of Claims and Interests,

(e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation, and reorganization, and

(f) is consistent with 11 U.S.C. §§ 105, 1123, and 1129, and other applicable provisions of the Bankruptcy Code.

The failure to effect the discharge, release, indemnification, and exculpation provisions described in Article XI of the Plan would seriously impair the Debtors' ability to confirm the Plan.

2. Release and Exculpation of Plan Investors. The releases and exculpation of each Plan Investor (in its capacity as such or otherwise, as set forth in Article 11.8 of the Plan), its Affiliates, shareholders, partners, directors, officers, employees, and advisors, set forth in Article 11.8 of the Plan by the Debtors and third parties (the "Plan Investor Releases") are a condition to the consummation of the transaction contemplated in the Investment Agreement and, thus, are necessary to the Debtors' reorganization and play an important part in the Plan. The Plan Investor Releases are fair and equitable, reasonable, and in the best interests of the Debtors, their estates, shareholders, creditors, and all parties-in-interest, and are an integral component of the Plan and the restructuring and resolution of the Chapter 11 Cases. More

specifically, factors which support approval of the Plan Investor Releases include, without limitation:

(a) The investment made by the Plan Investors pursuant to, and subject to the terms and conditions of, the Investment Agreement constitutes a material, substantial contribution to the Debtors' estates;

(b) The Plan Investors' contribution is necessary and integral to the success of the Plan because the Plan Investors' investment provides a substantial source of funds to the Debtors' estates and allows substantial distributions to be made to holders of Claims and Interests, which could not be made without the Plan Investors' investment pursuant to, and subject to the terms and conditions of, the Investment Agreement;

(c) The Plan Investor Releases are an important part of the Plan because without the Plan Investor Releases, the Plan Investors would not have agreed to make the substantial contributions to the Debtors' estates without obtaining the Plan Investor Releases; and

(d) The breadth of the Plan Investor Releases is necessary to the Plan and bears a reasonable relationship to the protection of the Debtors' estates. As set forth in the Voting Reports, the Plan, which includes the Plan Investor Releases, was overwhelmingly accepted by holders of Claims and Interests.

Accordingly, the Plan Investor Releases, including the third-party releases, are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and applicable law in the Second Circuit, and should be, and hereby are, approved.

3. Releases of GM-Related Parties. The releases of GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) by the Debtors and third parties (collectively, the "GM Releases") pursuant to Section 11.7 of the Plan, which are described in Article IV of the Delphi-GM Global Settlement Agreement, (i) are fair and equitable, reasonable, and in the best interests of the Debtors' estates and holders of Claims and Interests, (ii) are supported by truly unusual circumstances that render the release terms important to the process of the Plan, and (iii) are integral elements of the restructuring and resolution of the Chapter 11 Cases. More specifically, factors which support the approval of the GM Releases include, without limitation:

(a) As acknowledged by the Debtors in section 4.01(k) of the Delphi-GM Global Settlement Agreement, the consideration GM provided and will provide pursuant to the Delphi-GM Definitive Documents, the Union Settlement Agreements, and other agreements entered into as part of the Debtors' reorganization constitutes a material, substantial contribution to the Debtors' estates;

(b) GM's contribution is necessary to the success of the Plan because GM's consideration provides a substantial source of funds to the Debtors' estates and allows substantial distributions to be made to the holders of Claims and Interests, which could not be made without the GM Settlement;

(c) The GM Releases are an important part of the Plan because, as set forth in section 4.01(k) of the Delphi-GM Global Settlement Agreement, and as acknowledged by the Debtors, GM would not have agreed to make these substantial contributions to the Debtors' estates without obtaining the GM Releases;

(d) The breadth of the GM Releases is necessary to the Plan and bears a reasonable relationship to the protection of the Debtors estates; and

(e) Absent the GM Settlement and the GM Releases, as a result of existing indemnification agreements and GM's filed claims for indemnification and contribution, the third-party claims that are being released hereby may have indirectly impacted the Debtors and /or Reorganized Delphi.

Accordingly, the GM Releases, including the third-party releases, are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and the law in the Second Circuit, and should be, and hereby are, approved.

TT. <u>Registration Rights Agreement</u>. The Registration Rights Agreement is an essential element of the Plan and entry into the Registration Rights Agreement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into the Registration Rights Agreement on the terms and in the form set forth in Exhibit 7.16(b) to the Plan. The Debtors have provided sufficient and adequate notice of the Registration Rights Agreement, including any material modifications to the Registration Rights Agreement, to all parties-in-interest, including, without limitation, the Creditors' Committee, the Equity Committee, the Plan Investors, and GM. The Registration Rights Agreement shall, upon execution, be valid, binding, and enforceable and shall not be in conflict with any federal or state law.

UU. <u>Distributions of New Common Stock, Notes, and Warrants</u>. Certain distributions of New Common Stock and New Preferred Stock as contemplated by the