Plan are exempt from the requirements of section 5 of the Securities Act of 1933, as amended, and state registration requirements as follows:

1. by virtue of section 1145 of the Bankruptcy Code, as to distributions to holders of General Unsecured Claims, Section 510(b) Note Claims, Section 510(b) Equity Claims, Section 510(b) ERISA Claims, and holders of Existing Common Stock;

2. by virtue of section 1145 of the Bankruptcy Code, as to the distribution of the Seven-Year Warrants and Ten-Year Warrants to holders of Existing Common Stock;

3. by virtue of section 4(2) of the Securities Exchange Act, as to distributions to the Plan Investors that are made in exchange for the Plan Investors' other cash investments, including the "Series A" and "Series B" New Preferred Stock;

4. by virtue of section 1145 of the Bankruptcy Code, as to distributions to GM of the "Series C" New Preferred Stock and the GM Note pursuant to the terms of the Delphi-GM Global Settlement Agreement; and

5. by virtue of section 4(2) of the Securities Exchange Act, as to distributions of Direct Subscription Shares and Unsubscribed Shares.

As described in the amendment to Delphi's registration statement on Form S-1, filed on December 20, 2007, as further amended, the offering and sale of the Discount Rights, Par Value Rights, Six-Month Warrants, and New Common Stock in Reorganized Delphi to be issued pursuant to the exercise of the Discount Rights, Par Value Rights, and Six-Month Warrants will be registered pursuant to the Securities Act and will be offered solely by means of prospectuses relating to such securities which will be provided when

the Rights Offerings commence or such Six-Month Warrants are issued, as the case may be.

VV. Rights Offerings Estimation Motion. Notice of the Motion For Order Pursuant To 11 U.S.C. §§ 105(a) And 502(c) Estimating Or Provisionally Allowing Certain Unreconciled Claims Solely For Purposes Of Administration Of Discount Rights Offering ("Rights Offering Estimation Motion") (Docket No. 11606) was appropriate.

WW. The Plan Investors' Investment Intent. As disclosed on the record at the Confirmation Hearing at Joint Exhibit No. 119 and not otherwise controverted at the Confirmation Hearing, the "Series A" New Preferred Stock, and the New Common Stock into which such securities are convertible, have a two-year restriction on transfer and the "Series B" New Preferred Stock, and the New Common Stock into which such securities are convertible, have a 90-day restriction on transfer contained in the Certificate of Designation governing such securities. In addition, in Section 4(e) of the Investment Agreement, each Plan Investor represents that it "is acquiring the Investor Shares for investment for its own account, not as a nominee or agent, and not with the view to, or for resale in connection with, any distribution thereof not in compliance with applicable securities laws, and such Investor has no present intention of selling, granting any participation in, or otherwise distributing the same, except in compliance with applicable securities laws." By virtue of these restrictions and representations, the securities described above will come to rest with the Plan Investors, and the Plan Investors are purchasing these securities with investment intent and not with a view to a distribution of these securities.

XX. The Plan Investors Do Not Have "Control". As disclosed on the record at the Confirmation Hearing at Joint Exhibit No. 119 and not otherwise controverted at the Confirmation Hearing in Section 4(j) of the Investment Agreement, each Plan Investor represents that it "acknowledges and agrees that the [Debtor] is acting solely in the capacity of an arm's-length contractual counterparty to the Plan Investor with respect to the transactions contemplated hereby (including in connection with determining the terms of the Rights Offering)." At all times during the pendency of the Debtors' Chapter 11 Cases, including during the negotiations regarding the Investment Agreement, the Plan and related agreements and documents, the Plan Investors have negotiated on an arm's-length basis and have not "controlled" the Debtors, either through securities ownership, contractual arrangements, or otherwise. The holder of Delphi's new Series A-1 Preferred Stock will have certain governance and voting rights as set forth in the Certificate of Designation governing such securities and Reorganized Delphi's Certificate of Incorporation, but such holders will only be entitled to elect three of nine directors of Delphi's board of directors and only for a limited period not to extend beyond Delphi's 2011 annual meeting of stockholders. Delphi's new certificate of incorporation provides that at all times during such period, at least six of the nine directors must be independent of the Plan Investors and further provides that Delphi's board of directors must satisfy the independence criteria of any relevant stock exchange upon which the New Common Stock is listed. The corporate actions over which the holders of Series A-1 Preferred Stock have objection rights are very limited: liquidation; adverse changes to Delphi's certificate of incorporation or bylaws; and, only during the two-year transfer restriction period applicable to the Series A-1 Preferred Stock, certain transactions constituting a

sale of Delphi or acquisitions or investments of more than $250,000,000. These facts indicate that none of the Plan Investors controls the Debtors as contemplated by the Securities Act, the Exchange Act, or the Bankruptcy Code.

YY. Re-Sale Under 1145. The securities issued under the Plan pursuant to section 1145 of the Bankruptcy Code may be resold by the holders thereof without registration unless the holder is an "underwriter" with respect to such securities, as defined in section 1145(b)(1) of the Bankruptcy Code.

ZZ. IRC Section 414(l) Transfer. No earlier than the Effective Date, but no later than five days after the Effective Date (the "Transfer Date"), Reorganized Delphi shall make a transfer of pension assets and liabilities as set forth in section 2.03(c) of the Delphi-GM Global Settlement Agreement (the "IRC Section 414(l) Transfer"). On the Transfer Date, Reorganized Delphi shall also issue a note (the "414(l) Note") to GM as set forth in section 2.03(c)(iii)(3) of the GM-Delphi Global Settlement Agreement, which is payable by the Reorganized Delphi within ten days of the Transfer Date. The financial projections in Appendix C to the Disclosure Statement, the Sheehan Declaration, and other evidence proffered or adduced at the Confirmation Hearing establish that Reorganized Delphi has or will have on the Effective Date the financial wherewithal to consummate all transactions contemplated by section 2.03(c) of the Delphi-GM Global Settlement Agreement in accordance with the terms of such section.

AAA. Pension Plans. The Debtors sponsor various pension plans covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 ("ERISA"). Notwithstanding anything to the contrary in Article 7.22 of the Plan, the Pension Plans (as defined below) shall be frozen on or before March

1, 2008, or as soon as practicable thereafter, except as otherwise set forth in the Union Settlement Agreements. Pursuant to Article 7.22 of the Plan, and subject to the preceding sentence hereof, the following Debtors shall assume and continue the following plans on a frozen basis: (1) Delphi Corporation: Delphi Hourly-Rate Employees Pension Plan and Delphi Retirement Program for Salaried Employees; (2) Delphi Mechatronic Systems, Inc.: Delphi Mechatronic Systems Retirement Program; (3) ASEC Manufacturing: ASEC Manufacturing Retirement Program; and (4) Packard-Hughes Interconnect Company: Packard-Hughes Interconnect Bargaining Retirement Plan and Packard-Hughes Interconnect Non-Bargaining Retirement Plan (collectively, the "Pension Plans").

BBB. Pension Plans – Minimum Funding Contribution. No earlier than the Transfer Date, and no later than five days after the Effective Date, Reorganized Delphi shall contribute cash to the Pension Plans sufficient to meet ERISA minimum funding contributions not covered by the IRC Section 414(l) Transfer. Nothing in the Plan or the Confirmation Order shall have any effect on the Debtors' obligations under the minimum funding standard waiver letters (the "Waivers"), as amended, as approved by the Bankruptcy Court pursuant to the Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 9019 Authorizing Delphi Corporation To (A) Perform Under Pension Funding Waivers Issued By United States Internal Revenue Service And (B) Provide Letters Of Credit To Pension Benefit Guaranty Corporation Thereunder, entered May 31, 2007 (Docket No. 8117), and the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 9019 Authorizing Delphi Corporation To Perform Under Second Pension Funding Waiver Issued By United States Internal Revenue Service, entered October 25, 2007 (Docket No. 10726), or the Waivers as they may be further amended or extended. Nothing in the Plan shall be

construed as discharging, releasing, or relieving the Debtors or the Debtors' successors, including the Reorganized Debtors, or any party, in any capacity, from any liability for minimum funding under 26 U.S.C. § 412 and 29 U.S.C. § 1082 or liability under 29 U.S.C. § 1362 with respect to the Pension Plans or the PBGC. The PBGC and the Pension Plans shall not be enjoined or precluded from seeking to enforce such liability as a result of any provision of the Plan or the Confirmation Order.

CCC. Preservation Of Causes Of Action. It is in the best interests of the holders of Claims and Interests that the Retained Actions that are not expressly released under the Plan be retained by the Reorganized Debtors pursuant to Article 7.24 of the Plan to maximize the value of the Debtors' Estates. It is also in the best interests of holders of Claims and Interests that Avoidance Actions shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.24 of the Plan.

DDD. Judicial Notice. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1. Confirmation. The Plan, which consists of the Amended Plan (and all exhibits and supplements thereto) and the modifications set forth in Exhibit A hereto, which are hereby incorporated into and constitute a part of the Plan, is hereby approved and confirmed under section 1129 of the Bankruptcy Code. The exhibits to the Plan (as may be modified pursuant to the terms of the Plan and/or such exhibit, as applicable) are

incorporated by reference into and comprise an integral part of the Plan and this Confirmation Order.

2. Objections. All Objections to confirmation of the Plan that have not been withdrawn, waived, settled or addressed in the Plan, including Exhibit A hereto, and all reservations of rights included therein, are overruled on the merits.

3. Provisions Of Plan And Order Nonseverable And Mutually Dependent. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

4. Plan Classification Controlling. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors or interest holders in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, (c) may not be relied upon by any creditor or interest holder as representing the actual classification of such Claims or Interests under the Plan for distribution purposes, and (d) shall not be binding on the Reorganized Debtors, the Estates, or the Debtors.

5. Effects Of Confirmation; Immediate Effectiveness; Successors And Assigns. The stay provided by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order. Immediately upon the entry of this Confirmation Order, this

Confirmation Order and the terms of the Plan (subject to the provisions of Articles 12.2 and 12.3 of the Plan) shall be deemed binding upon (a) the Debtors, (b) the Reorganized Debtors, (c) all holders of Claims against and Interests in the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan, (d) each Person acquiring property under the Plan, (e) any other party-in-interest, (f) any Person making an appearance in these Chapter 11 Cases, and (g) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

6. Continued Corporate Existence; Vesting Of Assets. Except as otherwise provided in the Plan, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporate or other legal entity, with all the powers of a corporation or legal entity under applicable law in the jurisdiction in which each applicable Debtor is incorporated or otherwise formed and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws or other organizational documents are amended by the Plan. Except as otherwise explicitly provided in the Plan or in this Confirmation Order, including, without limitation, Articles 9.6 and 11.1 of the Plan and the Plan Modifications set forth herein, on the Effective Date, all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to the Plan or an order of the Court) shall revest in each of the Reorganized Debtors that owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights, and interests of creditors and interest holders. As of and following the Effective Date, the

Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

7. Intercompany Claims And Interests In The Affiliate Debtors. The treatment of Intercompany Claims and Interests in the Affiliate Debtors provided in Articles 5.6 and 7.2 of the Plan is approved in its entirety.

8. Release Of Liens. Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, including the Exit Financing Arrangements, on the Effective Date and/or concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens, or other security interests against the property of any Estate are fully released and discharged (except to the extent Reinstated under the Plan), and all right, title, and interest of any holder of such mortgages, deeds of trust, liens, or other security interests, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

9. Retained Assets. To the extent that the succession to assets of the Debtors by the Reorganized Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to Reorganized Debtors (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the Reorganized Debtors with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or Interests, except as expressly provided in the Plan or this Confirmation

Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

10. Return Of Deposits. All utilities, including any person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during these Chapter 11 Cases (collectively, the "Deposits"), including, without limitation, gas, electric, telephone, and sewer services, shall return such Deposits to the Debtors and/or the Reorganized Debtors, as the case may be, either by setoff against postpetition indebtedness or by cash refund, within 45 days following the Effective Date.

11. Discharge, Releases, Limitations Of Liability, And Indemnification. Pursuant to applicable law, including sections 105(a) and 1123(b)(3) and (6) of the Bankruptcy Code, the discharge of the Debtors and any of their assets or properties provided in Article 11.2 of the Plan, the releases set forth in Articles 11.4, 11.5, 11.6, 11.7, and 11.8 of the Plan, and the exculpation and limitation of liability provisions set forth in Articles 11.8 and 11.11 of the Plan, are deemed incorporated in this Confirmation Order as if set forth in full herein and are hereby approved as an integral part of the Plan and are fair, equitable, reasonable and in the best interests of the Debtors, their estates, and holders of Claims and Interests.

12. Injunction. Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of the Plan, the Debtors

and all Persons shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order or otherwise with respect to any Claim, Interest, Cause of Action or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind with respect to any Claim, Interest, Cause of Action or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Plan.

13. Automatic Stay. The stay in effect in the Chapter 11 Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunction set forth in the preceding paragraph and/or sections 524 and 1141 of the Bankruptcy Code and Article 11.14 of the Plan; provided, however, that nothing herein shall bar the filing of financing documents (including uniform commercial code financing statements, security agreements, leases, mortgages, trust agreements, bills of sale, and applications for aircraft registration) or the taking of such other actions as are

necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

14. Matters Relating To Implementation Of The Plan; General Authorizations. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order pursuant to section 1142(b) of the Bankruptcy Code or otherwise. In addition to the authority to execute and deliver, adopt, assign, or amend, as the case may be, the contracts, leases, instruments, releases, and other agreements specifically granted in this Confirmation Order, the Debtors and the Reorganized Debtors are authorized, and empowered, without necessity of action of their respective stockholders or boards of directors, to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order. Pursuant to section 1142 of the Bankruptcy Code, no action of the stockholders or boards of directors of the Debtors or the Reorganized Debtors shall be required for the Debtors or the Reorganized Debtors to (a) enter into, execute and deliver, adopt, or amend, as the case may be, any of the contracts, leases, instruments, releases, and other agreements or documents and plans to be entered into, executed and delivered, adopted, or amended in connection with the Plan, and, following the Effective Date, each of such contracts, leases, instruments, releases, and other agreements shall comprise a legal, valid, and binding obligation of the

applicable Reorganized Debtor and enforceable against such Reorganized Debtor in accordance with its terms, (b) issue for distribution or reserve, for issuance in accordance with the terms of the Plan, the New Common Stock, New Preferred Stock, New Warrants, or Rights (upon such issuance, all such shares shall be duly and validly authorized, issued, and outstanding, fully paid, nonassessable, free and clear of any mortgage, lien, pledge, security interest, or other encumbrance of any kind, and not subject to pre-emptive or similar rights of third parties), or (c) issue the GM Note and 414(l) Note in accordance with the Plan, the Delphi-GM Settlement Agreement, and the Investment Agreement (upon such issuance, if any, such notes shall be duly authorized, validly issued and outstanding, and free and clear of any mortgage, lien, pledge, security interest, or other encumbrance of any kind), or (d) authorize the Reorganized Debtors to engage in any of the activities set forth in this paragraph or otherwise contemplated by the Plan. Each of the Chief Executive Officer and President, Chief Financial Officer, Chief Restructuring Officer, and General Counsel of the Debtors, or their respective designees, as appropriate, shall be authorized, and empowered to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, this Confirmation Order, and any and all documents or transactions contemplated by the Plan or this Confirmation Order, all without further application to or order of the Court and whether or not such actions or documents are specifically referred to in the Plan, the Disclosure Statement, the Solicitation Procedures Order, this Confirmation Order, or the exhibits or appendices to any of the foregoing, and the signature of such officer on a document shall be conclusive evidence of the officer's

determination that such document and any related actions are necessary and appropriate to effectuate or further evidence, and are not in contravention of, the terms and conditions of the Plan, this Confirmation Order, or other documents or transactions contemplated by the Plan or this Confirmation Order. The secretary or any assistant secretary of each Debtor or Reorganized Debtor, as appropriate, is authorized and empowered when required, to certify or attest to any of the foregoing actions. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law or the rules of any stock exchange (including, without limitation, the New York Stock Exchange and the NASDAQ Global Select Market), any of the foregoing actions otherwise would require the consent or approval of the stockholders or the boards of directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the stockholders and directors of the appropriate Debtor or Reorganized Debtor.

15. Post-Effective Date Action. Any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order to be taken after the Effective Date shall be authorized only in accordance with applicable organizational documents and corporate law.

16. Directors And Officers Of Reorganized Debtors. In accordance with the applicable governance documents, the existing senior officers of the Debtors shall serve in their current capacities after the Effective Date (except for the Executive Chairman); provided, however, that, subject to the employment contracts of such existing officers, the board of directors of Reorganized Delphi reserves the right to remove any

officer and/or to identify and appoint new officers of Reorganized Delphi or the Affiliate Debtors at any time thereafter in accordance with the applicable governance documents. The Court approves the appointment of the initial directors of Reorganized Delphi, without the necessity for consent or approval of the stockholders, as disclosed at or prior to the Confirmation Hearing, as of and immediately following the Effective Date. The initial directors of Reorganized Delphi shall be considered to have taken office at a point in time immediately following the Effective Date. Notwithstanding any otherwise applicable non-bankruptcy law, directors of Reorganized Delphi appointed in accordance with Article 7.5(b) of the Plan and as set forth in Paragraph R above shall serve in three classes of directors as set forth in Article 7.5(b) of the Plan for the terms described in Article 7.5(c) of the Plan. The existing directors of the Affiliate Debtors shall continue to serve in their current capacities after the Effective Date, provided, however, that Reorganized Delphi shall have the right, in accordance with the applicable provisions of its corporate governance documents and other applicable agreements, to identify new members of the board of directors of such Affiliate Debtors at any time thereafter.

17. Approval Of Employment, Retirement, Indemnification, And Other Related Agreements And Incentive Compensation Programs. Pursuant to section 1142(b) of the Bankruptcy Code, without further action by the Court or the stockholders or board of directors of the Reorganized Debtors, and without limiting the power or authority of the Reorganized Debtors following the Effective Date to take any and all such actions as may be permitted or required by applicable nonbankruptcy law, the Reorganized Debtors shall be authorized, as of the Effective Date, to (a) maintain, amend, or revise existing employment, retirement, indemnification, and other agreements with