their respective active directors, officers, and employees who will continue in such capacities (or similar capacities) after the Effective Date, or retirement income plans, welfare benefit plans, and other plans for such Persons, subject to the terms and conditions of any such agreement, and subject to the Plan, and (b) enter into new employment, retirement, indemnification, and other agreements for active directors, officers, and employees, and retirement income plans, welfare benefits plans, and other plans for active and retired directors, officers, and employees, subject to the Plan; provided, however, that to enter into or obtain the benefits of any employment, retirement, indemnification, or other agreement with the Debtors or Reorganized Debtors, an employee must contractually waive and release any claims arising from pre-existing employment, retirement, indemnification, or other agreements with any of the Debtors.

18. <u>Freezing Of Pension Plans</u>. Notwithstanding anything in the Plan, the Pension Plans shall be frozen by March 1, 2008 or as soon as practicable thereafter.

19. <u>SERP Claims</u>. Notwithstanding Article 7.9 of the Plan and for the avoidance of doubt, to the extent a proof of claim asserting a claim for SERP benefits has already been properly filed, no further proof of claim shall be required to be filed in connection with the rejection and termination of the SERP.

20. <u>Exit Financing Arrangements</u>. The provisions of Article 7.14 of the Plan are approved in their entirety. Specifically, on the Effective Date, the Reorganized Debtors shall receive the proceeds of the Exit Financing Arrangements on the terms as set forth in the exit financing engagement letter and term sheet attached to the Plan as Exhibit 7.14, as such term sheet may be amended, modified, or supplemented in accordance with the Plan (subject to consents of third parties, if any, as may be

required by the Plan). The Reorganized Debtors are hereby authorized to execute any documents required to effectuate the Exit Financing Arrangements without further approval of the board of directors of the Debtors. The Exit Financing Arrangements shall constitute legal, binding and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Financing Arrangements shall be deemed to be approved and shall be legal, binding and enforceable liens on the collateral granted thereunder. In furtherance of the foregoing, the Reorganized Debtors and any other person granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of any state, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that would be necessary under applicable law to give notice of such liens and security interests to third parties.

21. <u>Exemption From Certain Taxes And Recording Fees</u>. Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security, or the making, delivery, filing, or recording of any instrument of transfer under, or in connection with, the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax, or similar tax. Furthermore, and without limiting the foregoing, any transfers from a Debtor to a Reorganized Debtor or to any other Person pursuant to the Plan, as contemplated by the Plan or pursuant to any agreement regarding the transfer of title to or ownership of any of the Debtors' property in the United States, shall not be

subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Court shall retain specific jurisdiction with respect to these matters.

22. <u>Assumptions</u>. The executory contract and unexpired lease provisions of Article VIII of the Plan are approved. All executory contracts and unexpired leases as to which any of the Debtors is a party shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such executory contracts or unexpired leases (i) shall have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (ii) shall be the subject of a motion to reject pending on or before the Effective Date, (iii) shall have expired or terminated on or prior to December 31, 2007 (and not otherwise extended) pursuant to their own terms, (iv) are listed on the schedule of rejected executory contracts or unexpired leases attached as Exhibit 8.1(a) to the Plan, or (v) are otherwise rejected pursuant to the terms of the Plan (the "Assumed Contracts and Leases"). Each of the Assumed Contracts and Leases shall be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. Listing a contract or lease on Plan Exhibit 8.1(a) shall not constitute an

admission by a Debtor or Reorganized Debtor that such contract or lease is an executory contract or unexpired lease or that a Debtor or Reorganized Debtor has any liability thereunder. Notwithstanding the foregoing or anything else in Article VIII of the Plan, (i) all executory contracts or unexpired leases between GM and the Debtors shall receive the treatment described in the Delphi-GM Definitive Documents, (ii) all agreements, and exhibits or attachments thereto between the Unions and Delphi shall receive the treatment described in Article 7.21 of the Plan and the Union Settlement Agreements, and (iii) all executory contracts memorializing Ordinary Course Customer Obligations shall receive the treatment described in Article 5.2 of the Plan.

23. <u>Payments Related To Assumption Of Material Supply Agreements.</u> This Confirmation Order shall constitute an order approving the assumptions described in Article 8.1 and 8.2(a) of the Plan, pursuant to section 365 of the Bankruptcy Code, which assumption shall be effective as of the Effective Date. To the extent that a counterparty complied with the procedures set forth in Article VIII and disputes the Debtors' proposed Cure Amount, then the Debtors and the counterparty shall comply with the Cure procedures established under the Solicitation Procedures Order and set forth in Article 8.2 of the Plan; provided, however, that (a) to the extent of any inconsistency, paragraph 23 shall supersede the procedures set forth in the Solicitation Procedures Order and Article 8.2(a) of the Plan with respect to Material Supply Agreements for which notice of assumption and cure was served after December 21, 2007, and (b) to the extent that no resolution is reached by a disputing counterparty and the applicable Debtor prior to the Effective Date, then the Cure Amount Claim, to the extent Allowed, shall be paid in Cash.

24. <u>Payments Related To Assumption Of Omitted Material Supply Agreements</u>. With respect to Material Supply Agreements to be assumed pursuant to Article VIII of the Plan that were not included on a Cure Amount Notice served on or prior to December 21, 2007 pursuant to Article 8.2(a) and the Solicitation Procedures Order (the "Omitted Contracts"), within five business days following entry of this Order, the Debtors shall file with the Bankruptcy Court and serve via overnight delivery upon the counterparties to such Omitted Contract a cure notice substantially in the form of Exhibit C attached hereto. Any monetary amounts by which an Omitted Contract is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code by Cure, and shall be paid in cash to the non-Debtor counterparty to the Omitted Contract. As shall be indicated on the cure notice, counterparties shall have ten days from the date of mailing to file and serve any objection to the Debtors' proposed assumption and Cure amount. If the non-Debtor party does not timely respond to the cure notice, the counterparty shall be deemed to have accepted the Debtors' proposed Cure and the assumption of such contract and the monetary amount of the Cure shall be paid as soon as reasonably practicable after the Effective Date. If the non-Debtor party responds to the cure notice prior to the ten-day objection period and in accordance with the procedures set forth in the notice, and the non-Debtor party asserts a dispute regarding (x) the nature or amount of any proposed Cure, (y) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (z) any other matter pertaining to the assumption, the Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be;

provided that if there is a dispute as to the amount of Cure that cannot be resolved consensually among the parties, the Debtors shall have the right to reject the contract or lease for a period of five days after entry of a Final Order establishing a Cure amount in excess of that provided by the Debtors. The Creditors' Committee shall be provided access to information regarding the Debtors' proposed Cure Claim payments above a threshold amount to be reasonably agreed upon by the Creditors' Committee and the Debtors, after which the Creditors' Committee may object to a proposed Cure Claim payment; provided, however, that any unresolved objection shall be determined by the Bankruptcy Court after notice and hearing.

25. **Payments Related To Assumption Of Other Executory Contracts And Unexpired Leases**. This Confirmation Order shall constitute an order approving the assumptions described in Article 8.1 of the Plan, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The provisions (if any) of each Other Executory Contract or Other Unexpired Lease to be assumed under the Plan which are or may be in default shall be satisfied solely by Cure. Any party to an Other Executory Contract or Other Unexpired Lease who wishes to assert that Cure shall be required as a condition to assumption shall file and serve a proposed Cure Claim so as to be received by the Debtors or Reorganized Debtors, as applicable, and their counsel at the address set forth in Article 14.8 of the Plan within 45 days after entry of this Confirmation Order (the "Cure Claim Submission Deadline"), after which the Debtors or Reorganized Debtors, as the case may be, shall have 45 days to file any objections thereto. Should a party to an Other Executory Contract or Other Unexpired Lease not file a proposed Cure Claim by the Cure Claim Submission Deadline in accordance with the procedures set forth in this

paragraph, then any default then existing shall be deemed cured as of the day following the Cure Claim Submission Deadline and such party shall forever be barred from asserting against the Debtors or the Reorganized Debtors, as applicable, any claim that arose on or prior to the Confirmation Date. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of any Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the matter shall be set for hearing in the Court on the next available hearing date, or such other date as may be agreed upon, and Cure, if any, shall occur following the entry of a Final Order of the Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that if there is a dispute as to the amount of Cure that cannot be resolved consensually among the parties, the Debtors shall have the right for a period of five days after entry of a Final Order establishing a Cure amount in excess of that asserted by the Debtors, to reject the contract or lease. If the Cure amount was filed and served in accordance with the procedures set forth herein and is not disputed, the Debtors or Reorganized Debtors, as the case may be, shall pay the Cure Claim, if any, to the claimant within 20 days after service of the Cure Claim. Disputed Cure amounts that are resolved by agreement or Final Order shall be paid by the Debtors within 20 days of such agreement or Final Order. Notwithstanding any of the foregoing, payments related to assumption of executory contracts or unexpired leases between GM and/or any of its Affiliates and any of the Debtors shall be in accordance with the Delphi-GM Definitive Documents.

26. _Payments Related To Assumption Of Intercompany Executory Contracts And Intercompany Unexpired Leases._ Any Claim relating to and outstanding at the time of assumption of an Intercompany Executory Contract or an Intercompany Unexpired Lease shall be Reinstated and shall be satisfied in a manner to be agreed upon by the relevant Debtors and/or non-Debtor Affiliates.

27. _Assignment Pursuant To Restructuring Transactions._ To the extent that a Debtor that is party to an executory contract or unexpired lease is to be merged or liquidated as part of a Restructuring Transaction, the non-Debtor parties to such executory contract or unexpired lease shall, upon assumption as contemplated in the Plan, be deemed to have consented to the assignment of such executory contract or unexpired lease to the Reorganized Debtor that is the surviving entity after such Restructuring Transaction.

28. _Assumption And Assignment Of Divestiture-Related Executory Contracts And Unexpired Leases._ In the event that the Court enters an order on or prior to the Effective Date authorizing a Debtor(s) to assume and assign certain executory contracts or unexpired leases in connection with a divestiture transaction, but the Debtor(s) does not assume and assign such contracts and leases prior to the Effective Date (a) notwithstanding anything to the contrary in the applicable sale order, such assumption shall be consummated pursuant to Article VIII of the Plan and service of notice and any Cure payments owed to the non-Debtor counterparty under such contracts and leases shall be made pursuant to Article 8.2 of the Plan and (b) the Debtor(s) shall be permitted to assign such assumed executory contracts and unexpired leases subsequent to

the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and the applicable sale order.

29. <u>Rejections</u>. As provided in Article 8.1 of the Plan, all executory contracts or unexpired leases shall be assumed by the Reorganized Debtors; <u>provided, however</u>, that any contract or lease set forth on Plan Exhibit 8.1(a) (the "Rejected Contracts and Leases") shall be rejected pursuant to section 365 of the Bankruptcy Code. All of the Rejected Contracts and Leases shall be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. This Confirmation Order shall constitute an order approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Notwithstanding the foregoing or anything else in Article VIII of the Plan, (i) all executory contracts or unexpired leases between GM and the Debtors shall receive the treatment described in the Delphi-GM Definitive Documents, (ii) all agreements, and exhibits or attachments thereto between the Unions and Delphi shall receive the treatment described in Article 7.21 of the Plan and the Union Settlement Agreements, and (iii) all executory contracts memorializing Ordinary Course Customer Obligations shall receive the treatment described in Article 5.2 of the Plan. Nothing in this Order modifies the section 365(d)(4) deadline under the Bankruptcy Code to assume or reject leases, as extended by prior orders of the Court, except that if the Debtors anticipate that the Plan will not become effective by February 29, 2008, the Debtors may file a motion (a "Real Property Lease Motion") to further extend the deadline under section 365(d)(4) of the Bankruptcy Code to assume or reject any and all unexpired leases of nonresidential real property ("Real Property Leases"), provided that the Real Property Lease Motion is filed on or before February 29, 2008 and noticed to be

heard at the next available omnibus hearing, and the date by which the Debtors must assume or reject any and all Real Property Leases is extended to February 29, 2008 for such purpose. Upon the filing of such a Real Property Lease Motion, the deadline to assume or reject any or all Real Property Leases shall be automatically extended until the later of (a) the date set forth in any subsequent order, (b) three business days after the Court rules on the Real Property Lease Motion, and (c) March 31, 2008.

30. <u>Bar Date For Rejection Damage Claims And Related Procedures</u>. If the rejection by the Debtors, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against either the Debtors, the Reorganized Debtors, or such entities' properties unless a proof of claim is filed with the Claims Agent and served upon counsel to the Debtors and the Creditors' Committee within 30 days after the later of (a) entry of the Confirmation Order or (b) notice that the executory contract or unexpired lease has been rejected, unless otherwise ordered by the Court.

31. <u>DIP Facility Claims</u>. On the Effective Date, the DIP Facility Revolver Claim, the principal amount of the DIP Facility First Priority Term Claim, and the principal amount of the DIP Facility Second Priority Term Claim shall each be allowed in an amount to be agreed upon by the Debtors and, as applicable, the DIP Lenders, or as ordered by the Bankruptcy Court, at least five Business Days prior to the Effective Date, and all obligations of the Debtors thereunder shall be paid in full in Cash in accordance with the DIP Credit Agreement on the Effective Date; <u>provided, however</u>, that with respect to letters of credit issued under the DIP Facility, such claims may be satisfied in full by the cash collateralization of such letters of credit, or by procuring

back-up letters of credit, in each case in accordance with the DIP Credit Agreement or as otherwise agreed to by the DIP Agent. Upon compliance with the foregoing sentence, all liens and security interests granted to secure the DIP Facility Revolver Claim, the DIP Facility First Priority Term Claim, and the DIP Facility Second Priority Term Claim shall be deemed cancelled and shall be of no further force and effect. To the extent that the DIP Lenders or the DIP Agent have filed or recorded publicly any liens and/or security interests to secure the Debtors' obligations under the DIP Facility, the DIP Lenders or the DIP Agent, as the case may be, shall take any and all commercially reasonable steps requested by the Debtors that are necessary to cancel and/or extinguish such publicly-filed liens and/or security interests.

32. <u>Investment Agreement</u>. Notwithstanding any provision in this Confirmation Order, the Investment Agreement is valid, binding, in full force and effect in accordance with its terms, and constitutes an obligation of the parties thereto fully enforceable on its terms, and is not amended or modified in any way hereby.

33. <u>Professional Claims And Final Fee Applications</u>. All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than the last day of the second full month after the Effective Date or May 31, 2008, whichever is later. After notice and a hearing in accordance with the procedures established by the Court and prior orders of the Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Court. Subject to the Holdback Amount, on the Effective Date, the Debtors or Reorganized Debtors shall pay all amounts owing to Professionals and members of the Statutory Committees for all outstanding amounts payable relating to

prior periods through the Confirmation Date. In accordance with Article 10.3(b) of the Plan, to receive payment on the Effective Date for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate fees and expenses due for periods that have not been billed as of the Confirmation Date and shall deliver such estimate to the Debtors, counsel for the Statutory Committees, and the United States Trustee for the Southern District of New York. Within 45 days after the Effective Date, a Professional receiving payment for the estimated period shall submit a detailed invoice covering such period in the manner and providing the detail as set forth in the Professional Fee Order or the Ordinary Course Professionals Order, as applicable. Should the estimated payment received by any Professional exceed the actual fees and expenses for such period, this excess amount shall be credited against the Holdback Amount for such Professional or, if the award of the Holdback Amount for such matter is insufficient, disgorged by such Professional. On the Effective Date, the Debtors or the Reorganized Debtors shall fund the Holdback Escrow Account with Cash equal to the aggregate Holdback Amount for all Professionals. The Disbursing Agent shall maintain the Holdback Escrow Account in trust for the Professionals with respect to whom fees have been held back pursuant to the Professional Fee Order. Such funds shall not be considered property of the Debtors, the Reorganized Debtors, or the Estates. The remaining amount of Professional Claims owing to the Professionals shall be paid to such Professionals by the Disbursing Agent from the Holdback Escrow Account when such claims are finally allowed by the Court. When all Professional Claims have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to the Reorganized Debtors. Upon the Confirmation Date, any requirement that Professionals

comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for such services rendered after such date will terminate, and the Reorganized Debtors may employ and pay Professionals in the ordinary course of business.

34.     Post-Confirmation Statutory Committee Fees. Professionals retained by the Statutory Committees after the Confirmation Date shall deliver written copies of invoices in respect of their fees and expenses, with a narrative description of services rendered, for the period between the Confirmation Date and the Effective Date to the Reorganized Debtors no later than the last day of the second full month after the Effective Date or May 31, 2008, whichever is later. If the Reorganized Debtors do not object to the fees and expenses, the Reorganized Debtors shall pay such fees and expenses within 15 business days after receipt of such invoices (without the need for such Professionals to file fee applications with the Court). The Reorganized Debtors shall not be required to make any payments with respect to the disputed portion of any fees or expenses until such portion of the disputed fees or expenses is resolved or approved by the Bankruptcy Court.

35.     Termination Of Reimbursement Obligations. Upon the Effective Date, the Reorganized Debtors shall have no continuing obligation to the Unions and the PBGC to reimburse financial advisor fees.

36.     Record Date For Claims Distributions. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Plan), and Servicers shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after January 17, 2008 (the

"Claims Record Date"), and shall be entitled for all purposes herein to recognize and distribute only to those holders of Allowed Claims who are holders of such Claims, or participants therein, as of the Claims Record Date. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Plan), and Servicers shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the official claims register or the transfer ledger, as the case may be, as of the Claims Record Date. On the Claims Record Date, the transfer ledgers of the Indenture Trustees, or other agents and Servicers shall be closed, and there shall be no further changes in the record holders of securities. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Plan), and Servicers shall have no obligation to recognize any transfer of the Senior Notes, the TOPrS, or the Subordinated Notes occurring after the Claims Record Date. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Plan), and Servicers shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the Claims Record Date, provided, however, that with respect to deceased record holders, the Indenture Trustee (as agent or Servicer as described in Section 9.5 of the Plan) shall be authorized, but not directed, to recognize transfers to the appropriate heir, executor, or otherwise, following provision of notice together with such evidence of the transfer to the appropriate Indenture Trustee as is reasonably satisfactory to the applicable Indenture Trustee. Such notice shall be effective only as to distributions due at least 60 days after such notice is accepted as satisfactory by the applicable Indenture Trustee.

37. <u>Record Date For Equity Distributions</u>. The Reorganized Debtors, the Disbursing Agent, and Servicers shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Interest that occurs after February 11, 2008 (the "Equity Record Date"), and shall be entitled for all purposes herein to recognize and distribute only to those holders of Allowed Interests who are holders of such Interests as of the Equity Record Date. The Reorganized Debtors, the Disbursing Agent, and Servicers shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the transfer ledger as of the Equity Record Date. On the Equity Record Date, the transfer registers of the Existing Common Stock shall be closed, and there shall be no further changes in the record holders of Existing Common Stock. The Reorganized Debtors, the Disbursing Agent, and Servicers shall have no obligation to recognize any transfer of the Existing Common Stock occurring after the Equity Record Date. The Reorganized Debtors, the Disbursing Agent, and Servicers shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the Equity Record Date, <u>provided</u>, <u>however</u>, that with respect to deceased record holders, the Disbursing Agent and Servicers shall be authorized, but not directed, to recognize transfers to the appropriate heir, executor, or otherwise, following provision of notice together with such evidence of the transfer to the appropriate Disbursing Agent or Servicers as is reasonably satisfactory to the applicable Disbursing Agent or Servicer. Such notice shall be effective only as to distributions due at least 60 days after such notice is accepted as satisfactory by the applicable Disbursing Agent or Servicer.