38. Substantial Contribution Compensation And Expenses Bar Date.

Any Person (including the Indenture Trustees) who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the Court on or before the 45th day after the Effective Date (the "503 Deadline"), and serve such application on counsel for the Debtors, the Statutory Committees, the Plan Investors, the United States Trustee for the Southern District of New York, and such other parties as may be directed by the Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

39. Indenture Trustee Fees.

(a) Prepetition Fees. On or within 10 business days after the Confirmation Date, the Indenture Trustees shall deliver to the Debtors, the Creditors' Committees, and the joint fee review committee established by the Professional Fee Order (the "Fee Review Committee") written copies of invoices in respect of prepetition fees and expenses (the "Prepetition Fee Claims"), with narrative descriptions of the services rendered (including appropriate redactions to preserve privileged matters) and itemization of expenses incurred in such detail and with such supporting documentation as is customarily submitted by Professionals in the Chapter 11 Cases. If none of the Debtors, the Creditors' Committee, or the Joint Fee Review Committee object to the Prepetition Fee Claims, the Debtors shall pay such claims in full in Cash by the later of the Effective Date or 10 business days after receipt of such invoices. The Debtors shall not be required to make any payments with respect to the disputed portion of a Prepetition Fee Claim until such portion of the disputed Prepetition Fee Claim is resolved

59

or approved by the Bankruptcy Court pursuant to section 1129(a)(4) on motion of the Indenture Trustee.

(b)     Postpetition Fees.   On or within 10 business days after the Confirmation Date, the Indenture Trustees shall deliver to the Debtors, the Creditors' Committee, and the Fee Review Committee written copies of invoices in respect of fees and expenses, including the fees and disbursements of counsel to the Indenture Trustees, incurred between the Petition Date and the Confirmation Date and a reasonable estimate of the fees and expenses, including the fees and disbursements of counsel to the Indenture Trustees, that will be incurred between the Confirmation Date and the Effective Date (collectively, the "Postpetition Fee Claims"), with narrative descriptions of the services rendered or to be rendered (including appropriate redactions to preserve privileged matters) and itemization of expenses incurred in such detail and with such supporting documentation as is customarily submitted by Professionals in the Chapter 11 Cases. If none of the Debtors, the Creditors' Committee, or the Joint Fee Review Committee object to the Postpetition Fee Claims within 10 business days of the receipt of the invoices therefor, the Debtors shall pay such Postpetition Fee Claims in full in Cash on or before the Effective Date. In the event any of the Debtors, the Creditors' Committee, or the Fee Review Committee shall object to payment of all or a portion of such fees within such 10- business day period, the Debtors shall not be required to make any payments with respect to the disputed portion of a Postpetition Fee Claim until the disputed portion of the Postpetition Fee Claim has been approved by the Bankruptcy Court pursuant to section 1129(a)(4) on motion of the Indenture Trustee.

40.     Other Administrative Claims.  All other requests for payment of an

Administrative Claim (other than as set forth in the Plan) must be filed, in substantially

the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Plan,

with the Claims Agent and served on counsel for the Debtors and the Statutory

Committees no later than 45 days after the Effective Date.  Any request for payment of

an Administrative Claim pursuant to this paragraph that is not timely filed and served

shall be disallowed automatically without the need for any objection from the Debtors or

the Reorganized Debtors.  The Debtors or the Reorganized Debtors may settle an

Administrative Claim without further Bankruptcy Court approval.  Unless the Debtors or

the Reorganized Debtors object to an Administrative Claim within 60 days after the

Administrative Claims Bar Date (unless such objection period is extended by the

Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount

requested.  In the event that the Debtors or the Reorganized Debtors object to an

Administrative Claim, the Court shall determine the allowed amount of such

Administrative Claim.  Notwithstanding the foregoing, no request for payment of an

Administrative Claim need be filed with respect to an Administrative Claim which is paid

or payable in the ordinary course of business.

41.     Substantive Consolidation.  For the reasons described in IX.C. of

the Disclosure Statement and the evidence and arguments made, proffered, or adduced at

the Confirmation Hearing, certain of the Debtors' estates shall be substantively

consolidated as set forth in Article III of the Plan, solely for the purposes of voting on the

Plan and making distributions to holders of Claims and Interests under the Plan.

42.     Restructuring Transactions. The Restructuring Transactions contemplated by Article 7.3 of the Plan and described in Exhibit 7.3 to the Plan are approved and the Debtors and Reorganized Debtors and their officers are authorized to take such actions as may be necessary and appropriate to effectuate the relevant Restructuring Transactions, including, without limitation, executing such documents as may be reasonably required in order to effectuate the Restructuring Transactions. Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and recording any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Restructuring Transactions.

43.     Registration Rights Agreement. Without limiting the effect of section 1145 of the Bankruptcy Code or the foregoing paragraphs, Reorganized Delphi is authorized and empowered to enter into the Registration Rights Agreement with GM, the Investors, and any Related Purchaser, Ultimate Purchaser (each as defined in the Investment Agreement), affiliate of a Plan Investor who owns registrable securities, assignee, or transferee, and any Creditor Party (as defined in the Registration Rights Agreement), who executes a joinder agreement as contemplated by Registration Rights Agreement on substantially the terms set forth in the form attached to the Plan as Exhibit 7.16(b), which form is hereby approved. Upon signature by the parties thereto, the Registration Rights Agreement shall become effective and binding in accordance with its terms and conditions upon the parties thereto without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule.

44. <u>Exemption From Securities Laws</u>. The provisions of section 1145 of the Bankruptcy Code are applicable to the issuance and distribution of the New Common Stock to holders of General Unsecured Claims, Section 510(b) Note Claims, Section 510(b) Equity Claims, Section 510(b) ERISA Claims, and Existing Common Stock in exchange for the recipient's Claim or Interest. In addition, the provisions of section 1145 of the Bankruptcy Code are applicable to the distribution of the Seven-Year Warrants and Ten-Year Warrants to holders of Existing Common Stock. Further, the provisions of section 1145 of the Bankruptcy Code are applicable to distributions to GM of the "Series C" New Preferred Stock and the GM Note. Section 4(2) of the Securities Exchange Act is applicable to distributions to the Plan Investors that are made in exchange for the Plan Investors' other cash investments, including the "Series A" and "Series B" New Preferred Stock as well as distributions of Direct Subscription Shares and Unsubscribed Shares. Therefore, to the extent that an "offer or sale" is deemed to have occurred with respect to the above, any such securities are exempt from the requirements of section 5 of the Securities Act and state registration requirements. Pursuant to and to the fullest extent permitted by section 1145 of the Bankruptcy Code, the resale of any securities issued under the Plan shall be exempt from section 5 of the Securities Act and any state registration requirements. Notwithstanding the foregoing, as described in the amendment to Delphi's registration statement on Form S-1, filed on December 20, 2007, as further amended, the offering and sale of the Discount Rights, the Par Value Rights, the Six-Month Warrants, and the New Common Stock in Reorganized Delphi to be issued pursuant to the exercise of the Discount Rights, Par Value Rights, and/or the Six-Month Warrants will be registered pursuant to the Registration Statement under the

63

Securities Act and will be offered solely be means of prospectuses relating to such securities which shall be provided at such time as the Rights Offerings commence or such Six-Month Warrants are issued, as the case may be.

45. <u>Resolution Of Claims And Interests</u>. Except as otherwise ordered by the Court, any Claim or Interest that is not an Allowed Claim or Allowed Interest shall be determined, resolved, or adjudicated in accordance with the terms of the Plan. The Debtors or Reorganized Debtors, as the case may be, may (a) until 120 days after the Effective Date (unless extended by order of the Court) file objections in the Court to the allowance of any Claim or Interest (whether or not a proof of Claim or Interest has been filed) and/or (b) amend their Schedules at any time before their Chapter 11 Cases are closed.

46. <u>Existing Common Stock</u>. Pursuant to the cancellation of the Existing Common Stock set forth in Article 7.10 of the Plan, the par value for all issued and outstanding Existing Common Stock and any related paid-in capital in excess of par value shall be reduced to zero. Any par value and related paid-in capital in excess of par value related to the New Common Stock shall be established pursuant to generally accepted accounting principles.

47. <u>Distribution Reserve</u>. The Debtors shall establish one or more Distribution Reserves of New Common Stock, New Warrants, Oversubscription Cash, and Cash raised by the Par Value Rights Offering for the purpose of effectuating distributions to holders of Disputed Claims or Disputed Interests pending the allowance or disallowance of such claims or interests in accordance with the Plan. The amounts to be withheld as part of the Distribution Reserves shall be determined as set forth in Article

9.8(b) of the Plan. The Debtors or the Reorganized Debtors may request estimation for any Disputed Claim that is contingent or unliquidated, but such parties are not required to do so, and nothing herein shall impair any claimant's defenses or objections to such requested estimation. Such Distribution Reserve may not be relied upon to show that any Disputed Claim is either probable or estimable for any other purpose. Any Disputed Claim or Disputed Interest that ultimately becomes an Allowed Claim or Allowed Interest as the case may be, shall be entitled to receive its applicable distribution under the Plan solely from the Distribution Reserves established on account of such Disputed Claim or Disputed Interest. In no event shall any holder of a Disputed Claim or Disputed Interest have any recourse with respect to distributions made, or to be made, under the Plan to holders of such Claims or Interests to any Debtor or Reorganized Debtor on account of such Disputed Claim or Disputed Interest, regardless of whether such Disputed Claim or Disputed Interest shall ultimately become an Allowed Claim or Allowed Interest, as the case may be, or regardless of whether sufficient Cash, New Common Stock, New Warrants, or other property remains available for distribution in the Distribution Reserve established on account of such Disputed Claim or Disputed Interest at the time such Claim or Interest becomes entitled to receive a distribution under the Plan.

48.    Payment Of Fees. All fees payable by the Debtors under 28 U.S.C. § 1930 shall be paid on or before the Effective Date, and each Reorganized Debtor shall pay quarterly fees plus accrued interest under 28 U.S.C. § 1930 and 31 U.S.C. § 3717 to the United States Trustee for its Chapter 11 Case, notwithstanding any substantive

consolidation for plan purposes, until its Chapter 11 Case is dismissed, converted to chapter 7 or closed by the entry of a final decree.

49.     Authorization To Consummate Plan. Notwithstanding Bankruptcy Rule 3020(e), but subject to Articles 12.2 and 12.3 of the Plan, the Court authorizes the Debtors to consummate the Plan upon entry of this Confirmation Order. The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, uniform commercial code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

50.     Failure To Consummate Plan. If consummation of the Plan does not occur, then the Plan, any settlement or compromise embodied in the Plan (including, but not limited to, the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests, the effect of substantive consolidation for purposes of the Plan, the MDL Settlements, the Court's order approving the MDL Settlements, the GM Settlement, or the allocation of the distributions to be made thereunder), the assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void. In such event, nothing contained in the Plan, the Disclosure Statement, or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person, to prejudice in any manner the rights of the Debtors, the holder of a Claim or Interest, the Creditors'

Committee, the Equity Committee, GM, the Plan Investors, or any Person in any further proceedings involving such Debtor or Debtors or to constitute an admission of any sort by the Debtors or any other Person, or be construed as a finding of fact or conclusion of law with respect thereto. Upon the occurrence of the Effective Date with respect to each Debtor, the Plan shall be deemed substantially consummated as to such Debtor.

51. Retention Of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, and subject to the provisions of Sections 7.05 and 7.10 of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement, respectively, the Court shall retain exclusive jurisdiction as provided in the Plan over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in Article XIII of the Plan.

52. Dissolution Of Statutory Committees. Effective on the Effective Date, the Statutory Committees appointed in the Chapter 11 Cases shall dissolve automatically, whereupon their members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to obligations arising under confidentiality agreements, non-disclosure agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases, all of which shall remain in full force and effect according to their terms. The Professionals retained by the Statutory Committees and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection

with challenges to any order confirming the Plan or any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date and for the other duties and responsibilities of the Statutory Committees set forth in this paragraph 52 and the Plan and other services as may be requested by the Debtors, and the Reorganized Debtors shall pay the fees and expenses in respect of such services in the ordinary course of business without further order of the Bankruptcy Court.

53.     References To Plan Provisions. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence. Notwithstanding the foregoing, in the event there are any conflicts between the terms and provisions of the Plan or this Confirmation Order (as either document may be amended) and the terms and provisions of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement, the terms of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement (as appended to the Plan as Exhibits 7.20(a) and 7.20(b) and incorporated by reference in the

Plan) shall govern; provided, however, that notwithstanding the foregoing or anything to the contrary in this order, the Plan or the Delphi-GM Definitive Documents, and upon the consent of GM, which consent was acknowledged by GM's counsel on the record at the Confirmation Hearing, nothing in this order, the Plan, or the Delphi-GM Definitive Documents providing for the release of GM-Related Parties or an injunction of actions against GM-Related Parties shall apply to (i) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of the United States or any agency thereof, (ii) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of any State or any agency of any State, under state or federal environmental laws; or (iii) any criminal liability under the laws of the United States or any State. In addition, nothing contained in the Plan or this Confirmation Order shall alter, amend, or modify the rights of the Plan Investors under the Investment Agreement, which remains binding and enforceable, unless such alteration, amendment, or modification has been agreed to in writing by each Plan Investor. To the extent that any exhibit to the Plan is inconsistent with the terms of the Plan and unless otherwise provided in this Confirmation Order, the terms of the exhibit to the Plan shall control as to all transactions contemplated thereby and the terms of the Plan shall control as to any Plan provision that may be required under an exhibit to the Plan other than the provisions of Section 9 of the Investment Agreement, which provisions shall control in all respects.

54. _Separate Confirmation Orders_. This Confirmation Order is and shall be deemed a separate Confirmation Order with respect to each of the Debtors in each Debtors' separate Chapter 11 Case for all purposes. The Clerk of the Court is

directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the Debtors.

55.     Filing And Recording. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released, discharged, and terminated and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

56.     Notice Of Confirmation Order And Occurrence Of Effective Date. On or before the fifth Business Day following the occurrence of the Effective Date, the Debtors shall serve notice of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all holders of Claims and Interests, the United States Trustee for the Southern District of New York, and other parties-in-interest, by causing a notice of this Confirmation Order and the

occurrence of the Effective Date in substantially the form of the notice annexed hereto as Exhibit D, which form is hereby approved (the "Notice of Effective Date"), to be delivered to such parties by first class mail, postage prepaid; provided, however, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar marking, unless the Debtors have been informed in writing by such Person of that Person's new address. The notice described herein is adequate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary. Notwithstanding the foregoing, pursuant to Bankruptcy Rule 2002(l), the Debtors shall be deemed to have satisfied the requirements of Bankruptcy Rule 2002(f)(7) with respect to any Claimholder that does not reside in the United States by publishing the Notice of Effective Date in the Wall Street Journal (national, European, and Asian editions), the New York Times (National Edition), and USA Today (worldwide), within 15 Business Days of the Effective Date.

57. 28 U.S.C. § 157(d). Nothing in this Confirmation Order or the Plan is intended to modify or violate 28 U.S.C. § 157(d).

58. GM Settlement. The GM Settlement is hereby authorized and approved pursuant to section 1123(b)(3) of the Bankruptcy Code, including (a) the Delphi-GM Global Settlement Agreement, attached to the Plan as Exhibit 7.20(a), which resolves, inter alia, the GM Claim, and (b) the Delphi-GM Master Restructuring Agreement, attached to the Plan as Exhibit 7.20(b), which sets forth the continuing

obligations of GM and Delphi. The terms of the Delphi-GM Global Settlement Agreement and the Delphi-GM Master Restructuring Agreement, and the exhibits thereto, are incorporated by reference into and comprise an integral part of the Plan and this Confirmation Order. In addition, to the extent that the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement required certain provisions to be contained in the Plan, including without limitation, the releases required by sections 4.01, 4.02, and 4.03 of the Delphi-GM Global Settlement Agreement (incorporated by reference in Article 11.7 of the Plan), the retention of jurisdiction by the Bankruptcy Court required by section 7.05 of the Delphi-GM Global Settlement Agreement and section 7.10 of the Delphi-GM Master Restructuring Agreement, and the terms and provisions relating to the assumption and rejection of contracts by and among the parties to the Delphi-GM Master Restructuring Agreement as required by Article 5 of the Delphi-GM Master Restructuring Agreement, such provisions are hereby approved. In addition, as provided in section 7.23 of the Delphi-GM Global Settlement Agreement, the Affiliates of both GM and Delphi are hereby deemed to have acknowledged and shall be bound by the terms of the Delphi-GM Global Settlement Agreement. Reorganized Delphi shall be authorized, empowered, and directed to make, no earlier than the Effective Date, but no later than five days after the Effective Date, the IRC Section 414(l) Transfer as set forth in section 2.03 of the Delphi-GM Global Settlement Agreement and to issue and pay the 414(l) Note as set forth in section 2.03(c)(iii)(3) thereof.

59.     MDL Settlements. Upon the entry of orders approving the MDL Settlement by the Court and the MDL Court, distributions pursuant to the Plan on account of Section 510(b) Note Claims, Section 510(b) Equity Claims, and Section 510(b)

72

ERISA Claims shall be made in accordance with the terms of Articles 5.5, 5.8, 5.9, 7.15(a), 7.16 and 7.19 of the Plan.

60.     Union Settlement Agreements.  Pursuant to the Plan, upon the Effective Date, the Union Settlement Agreements and the certain documents referenced in Section 7.21 of the Plan shall be assumed and shall be valid, binding, and enforceable and shall not be in conflict with any federal or state law.

61.     Effect On Other Orders And Agreements.  Neither the confirmation of the Plan nor anything set forth in this Confirmation Order shall modify the following previous orders of the Court, except to the extent contemplated in such orders: (a) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding Among UAW, Delphi, and General Motors Corporation Including Modification of UAW Collective Bargaining Agreements and Retiree Welfare Benefits for Certain UAW-Represented Retirees, entered July 19, 2007 (Docket No. 8693), (b) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding Among IUE-CWA, Delphi, and General Motors Corporation Including Modification of IUE-CWA Collective Bargaining Agreements and Retiree Welfare Benefits for Certain IUE-CWA-Represented Retirees, entered August 16, 2007 (Docket No. 9106), (c) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving (I) Memoranda of Understanding Among IUOE, IBEW, IAM, Delphi, and General Motors Corporation Including Modification of IUOE, IBEW, and IAM Collective Bargaining Agreements and Retiree Welfare Benefits for Certain IUOE, IBEW, and IAM-Represented Retirees and (II) Modification of, and Term Sheet Regarding, Retiree Welfare Benefits for Certain

Non-Represented Hourly Active Employees and Retirees, entered August 16, 2007 (Docket No. 9107), (d) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memoranda of Understanding Among USW, Delphi, and General Motors Corporation Including Modification of USW Collective Bargaining Agreements and Retiree Welfare Benefits for Certain USW-Represented Retirees, entered August 29, 2007 (Docket No. 9169), (e) Order Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement Pursuant to 11 U.S.C. §§ 105(a), 363(b), 503(b), and 507(a), entered August 2, 2007 (Docket No. 8856), (f) Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b), and 507(a) Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement Amendment, entered December 10, 2007 (Docket No. 11382), and (g) both the Amended Opinion And Order Regarding Lead Plaintiffs' Motions For (1) Final Approval Of Settlements, (2) Settlement Class Certification, (3) Final Approval Of Plans Of Allocation, And (4) Award Of Attorneys' Fees; And Delphi Trust I Interim Counsel's Motion For Attorneys' Fees, Case No. 05-MD-01725 (E.D. Mich., January 11, 2008) and the Final Order Approving the Multidistrict Litigation and Insurance Settlement entered on January 25, 2008 (Docket No. 12358).

62.    Resolution Of Plan Objections Of Certain Senior Noteholders.

(a)    The request for approval of the settlement (the "Senior Noteholders Settlement") under Bankruptcy Rule 9019 with certain holders of Senior Notes (the "Senior Noteholders") represented by Goodwin Procter LLP made by oral motion of the Debtors on January 17, 2008, is hereby approved.

(b)     Notice of the Senior Noteholders Settlement was adequate and the terms of the Senior Noteholders Settlement as described on the record, are appropriate and in the best interests of the Debtors and their estates.

(c)     Under the terms of the Senior Noteholders Settlement:

(i)     The Senior Noteholders' objections to confirmation of the Plan (Docket Nos. 11471, 11951), the MDL Settlement (Docket Nos. 10687, 10689), and certain motions for allowance of claims pursuant to Bankruptcy Rule 3018 (Docket Nos. 11830, 11960) are withdrawn based on the Senior Noteholders Settlement;

(ii)     The Debtors agree to pay, up to an aggregate maximum of $5 million, all actual, reasonable, documented fees and expenses incurred by Goodwin Procter LLP, Klestadt & Winters (as special conflicts counsel), and Maryann Keller & Associates (collectively, the "Noteholders' Professionals") from September 1, 2007 through January 17, 2008, in connection with the representation of Senior Noteholders who were current clients of the Noteholders' Professionals as of January 17, 2008, and former clients of the Noteholders' Professionals to the extent current clients of the Noteholders' Professionals benefited from the work product performed on behalf of the former clients.

(iii)     The Noteholders' Professionals fees and expenses are subject to Court review for reasonableness, based on the totality of the circumstances, and approval pursuant to section 1129(a)(4) of the Bankruptcy Code.  The Noteholders' Professionals shall be required to file fee applications and shall be subject to the procedures described in the Professional Fee Order; provided, however, that the Debtors shall not be required to pay any of the Noteholders' Professionals' fees and expenses until such fees and expenses have been approved by the Court as being reasonable based on the totality of the circumstances.  The Debtors shall use their reasonable best efforts to obtain Court approval of the payment of such fees and expenses, including, without limitation, preparing and filing supporting pleadings and, if necessary, propounding testimony in support of the fee applications and Senior Noteholders Settlement.

63.     Miscellaneous.

(a)     Notwithstanding anything in Article 5.1 of the Plan to the contrary, any holder of a Secured Claim, which Claim arose as a result of a tax secured by a lien, shall retain its lien in accordance with applicable non-bankruptcy law until the

Claim is paid in full with Postpetition Interest as provided in the Plan, and the payment of the Secured Claim shall not include the treatment set forth in Article 2.2(i) of the Plan.

(b)    Notwithstanding any provision of the Plan or this Confirmation Order to the contrary, the confirmation and effectuation of the Plan as modified shall not release, reduce, or discharge the Reorganized Debtors from any obligations under the Underwriters Indemnification Agreement dated August 31, 2007.

(c)    As stated on the record at the Confirmation Hearing, in resolution of the objection to confirmation of the Plan filed by Audio MPEG, Inc. and S.I.SV. EL., S.p.A. (Docket No. 11883), Claims against non-Debtors that are independent of the commercial relationship between the Debtors and Audio MPEG, Inc. or its parent Societa' Italiana per lo Sviluppo dell'Elettronica, S.I.SV.EL., S.p.A. are not covered under the third party release set forth under Article 11.5 of the Plan.

64.    <u>Modifications To The Amended Plan</u>.  At the request of the Debtors, the Amended Plan is hereby modified pursuant to section 1127(a) of the Bankruptcy Code as set forth on <u>Exhibit A</u> hereto.

Dated:  New York, New York
          January 25, 2008


                                    /s/ Robert D. Drain
                                    UNITED STATES BANKRUPTCY JUDGE